## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re | § | |
| | § | **No. 20-35474** |
| **EAGLE PCO LLC, et al.**[1] | § | **Chapter 11** |
| | § | **Jointly Administered** |
| *Debtor.* | § | |

---

### FIRST AMENDED PLAN OF REORGANIZATION
### FOR SMALL BUSINESS UNDER CHAPTER 11
Dated January 7, 2021

---

THIS PLAN OF REORGANIZATION IS SUBMITTED TO ALL CREDITORS AND INTEREST HOLDERS OF THE DEBTORS, EAGLE PRESSURE CONTROL LLC (NO. 20-35475) AND EAGLE PCO LLC (NO. 20-35474), WHICH ARE BEING JOINTLY ADMINISTERED, ENTITLED TO VOTE ON THE CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY THE DEBTORS PURSUANT TO THE SMALL BUSINESS REORGANIZATION ACT, CODIFIED IN SUBCHAPTER V OF CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE. 11 U.S.C. §§ 1181–1195. THIS PLAN OF REORGANIZATION CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO VOTE TO ACCEPT OR REJECT THE PLAN. ALL CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE ENTIRE PLAN CAREFULLY.

A CONFIRMATION HEARING FOR THIS PLAN OF REORGANIZATION WILL BE HELD IN COURTROOM 402 AT THE UNITED STATES COURTHOUSE, 515 RUSK, 4TH FLOOR, HOUSTON, TX 77002 ON THURSDAY, FEBRUARY 4, 2021 AT 9:00 A.M. CST.

ONLY HOLDERS OF ALLOWED CLAIMS WHICH ARE IMPAIRED MAY VOTE ON THE PLAN. IMPAIRED CLASSES ARE THOSE CLAIMS IN:

---

[1] The Debtors in these Chapter 11 cases are: (a) Eagle PCO LLC (No. 20-35474) and (b) Eagle Pressure Control LLC (No. 20-35475).

- Class 2F
- Class 2J
- Class 3
- Class 4

Creditors and interest holders entitled to vote on the Plan are urged to vote in favor of this Plan of Reorganization and to return the completed ballot to Pendergraft & Simon, LLP, 2777 Allen Parkway, Suite 800, Houston, TX 77019 not later than Thursday, January 28, 2021. Votes will be tabulated with respect to the debtor's Plan and claims will be classified and distributions in accordance with the Plan.

To the extent the Debtor does not receive sufficient votes for confirmation of a consensual Plan, Debtor intends to invoke the cramdown provisions of Section 1191(b) of the Bankruptcy Code in order to obtain confirmation of the Plan. Alternatively, the Plan may be withdrawn and a new Plan submitted.

This Plan incorporates by reference certain documents relating to the Debtor that are not presented herein or delivered with this Plan, including, but not limited to, the Debtor's Schedules, the Debtor's Statement of Financial Affairs, and the Debtor's monthly operating reports. These and all other documents and pleadings filed with the Court pertaining to this case are available from the Clerk of the Court (515 Rusk, 5th Floor, Houston, TX 77002, Tel. 713-250-5500). Electronic access to these documents and pleadings is available at http://ecf.txsb.uscourts.gov. A PACER login will be necessary to view the documents. If you do not have a PACER login, you may register online at http://pacer.psc.uscourts.gov.

# Table of Contents

I. Background for Case Filed Under Subchapter V ............................................................... 6

    A. Description and History of the Debtor's Business ................................................ 6

        1. Eagle Pressure Control LLC ...................................................................... 6

        2. Eagle PCO LLC .......................................................................................... 6

    B. Liquidation Analysis ............................................................................................. 9

    C. Ability to make future plan payments and operate without further reorganization .......... 9

II. Summary ........................................................................................................................10

III. Classification of Claims and Interests .........................................................................11

IV. Treatment of Administrative Expense Claims, Priority Claims, and Quarterly and
Court Fees ...........................................................................................................................12

    A. Unclassified claims ..............................................................................................12

    B. Administrative expense claims ............................................................................12

    C. Priority tax claims ................................................................................................12

        1. Texas Ad Valorem Taxes ...........................................................................12

        2. New Mexico sales taxes .............................................................................13

        3. Texas sales taxes ........................................................................................13

        4. Bluebonnet Ground Water Conservation District ......................................13

        5. Deferred Payroll Taxes ..............................................................................14

    D. Statutory fees .......................................................................................................14

    E. Prospective quarterly fees ....................................................................................14

V. Treatment of Claims and Interests Under the Plan .......................................................14

VI. Allowance and Disallowance of Claims ......................................................................21

    A. Disputed claims ...................................................................................................21

    B. Objections to claims .............................................................................................21

    C. Interim distributions on allowed claims ..............................................................21

    D Delay of distributions on a disputed claim ..........................................................21

    E. Anticipated claims objections ..............................................................................22

        1. Objections related to personal injury claims .............................................22

        2 Other anticipated claim objections ............................................................22

    F. Settlement of disputed claims ..............................................................................22

VII. Provisions for Executory Contracts and Unexpired Leases .......................................23

A.  Assumed executory contracts and unexpired leases.........................................................23

B.  Rejected executory contracts and unexpired leases..........................................................23

VIII. Post-Confirmation Management ........................................................................................23

IX. Means for Implementation of the Plan.................................................................................24

A.  Financial Commitment by Aspen Energy Partners, LLC ...................................................24

1.  DIP Financing .........................................................................................................24

2.  Capital Contributions ..............................................................................................24

B.  Valuation of Collateral ....................................................................................................24

C.  Retained claims................................................................................................................24

1.  Preferences ............................................................................................................24

2.  Fraudulent transfers ...............................................................................................25

3.  Indemnity and contribution claims .........................................................................25

D.  Distributions to Holders of Allowed Claims .....................................................................25

1.  Distributions by Debtor under a consensual Plan ...................................................25

2.  Distributions by Subchapter V Trustee under a non-consensual Plan ......................25

3.  Distribution Process.................................................................................................25

E.  Surrender of Collateral ...................................................................................................26

X. General Provisions .................................................................................................................26

A.  Definitions and rules of construction...............................................................................26

B.  Effective Date ..................................................................................................................28

C.  Severability .....................................................................................................................28

D.  Binding effect...................................................................................................................28

E.  Headings..........................................................................................................................28

F.  Controlling effect .............................................................................................................29

G.  Retention of jurisdiction ..................................................................................................29

XI. Effect of Confirmation .........................................................................................................30

XII. No Discharge .......................................................................................................................31

XIII. Other Provisions.................................................................................................................31

A.  General ...........................................................................................................................31

B.  Injunctions related to Debtor's members.........................................................................31

C.  Exculpation and Limitation of Liability ...........................................................................31

D.  Vesting of Assets..............................................................................................................32

E.  Employment of professionals after the Effective Date .....................................................32

F.   Final Decree ................................................................................................. 32

G.   Reservations of right to amend Plan ..........................................................33

H.   Alternative Plans of Reorganization..........................................................33

# I.
## Background for Case Filed Under Subchapter V

### A.   Description and History of the Debtor's Business

Eagle Pressure Control LLC filed a voluntary petition under Subchapter V of Chapter 11 of the United States Bankruptcy Code on November 6, 2020, in case number 20-35475. Its wholly owned subsidiary, Eagle PCO LLC, also filed a voluntary petition under Subchapter V of Chapter 11 of the United States Bankruptcy Code, on November 6, 2020, in case number 20-35474.

On November 10, 2020, the Bankruptcy Court entered an Order Directing Joint Administration, which requires the filing of a single plan for both debtors. (ECF no. 7).

### 1.   Eagle Pressure Control LLC

The Debtor, Eagle Pressure Control LLC, is a limited liability company formed and organized under the laws of the State of Delaware on October 31, 2017. It registered to conduct business in the State of Texas on November 20, 2017. The sole purpose of Eagle Pressure Control LLC is to serve as a holding company, and it owns 100 percent of the equity in and is the sole Member of Eagle PCO LLC.

Other than this investment in Eagle PCO LLC, Eagle Pressure Control LLC owns no other assets, and it owes a single, secured debt to an insider, Aspen Energy Partners, LLC ("AEP"), the treatment of which is described more fully in Article V of this Plan of Reorganization. (page 20, *infra*). This debt, which is a revolving line of credit of up to $5 million, was acquired from Zions Bancorporation, N.A. d/b/a Amegy Bank on, or about, June 27, 2019 for the balance then due— $691,547.79. Between the time of the acquisition of the debt and the Petition Date, AEP allowed Eagle Pressure Control to draw $2,759,092.68, for financing Eagle PCO LLC's business operations.

### 2.   Eagle PCO LLC

The Debtor, Eagle PCO LLC, is a limited liability company formed and organized under the laws of the State of Texas, on December 14, 2017, by converting Navasota Oilfield Services, Inc. to a limited liability company. Navasota Oilfield Services, Inc. was originally formed as a Texas corporation on August 13, 2008, and it was purchased by Eagle Pressure Control LLC on, or about, December 14, 2017.

Eagle PCO is engaged in the design, manufacture, and sale of wellhead and pressure control equipment for the oil and gas production industry. Additionally, it maintains a fleet of frac valves and ancillary equipment for short-term rental.



Photograph of a typical frac valve stack.

It also offers repair and refurbishment services and provisions service crews to assist in the installation and operation of wellhead pressure control systems.

Eagle PCO's primary base of operations is at 5808 FM 3455, Navasota, Texas. It also has leased facilities in Midland, Texas and Pleasanton, Texas.

Three events in 2020 have contributed to cash shortages which caused the Debtors to seek bankruptcy protection. First, an explosion occurred on January 29, 2020 at the Daniel H. Wendland 1H oil well in Burleson County, Texas, which was operated by Chesapeake Energy Corporation, or one of its affiliates. At the time of the explosion, Eagle PCO had employees on the site. Eagle PCO believes that Chesapeake is contractually responsible for all acts and omissions because it was in control of the well at all material times.

To date, nine lawsuits have been filed by persons who sustained injuries in this explosion, and these claims have been turned over to Eagle PCO's insurance carriers. These lawsuits are:

1. *Norma Lynn Maldonado v. Chesapeake Operating, L.L.C; Chesapeake Energy Corporation, SDS Petroleum Consultants, L.L.C, A&L Hot Oil Service, Inc.; Forbes*

*Energy Services, LTD.; Forbes Energy Services, L.L.C.; CC Forbes, L.L.C.; Eagle PCO, LLC,* Cause No. DC-20-06809, in the 162nd District Court for Dallas County, Texas.

2.  *Madison Hendrix, individually and as the personal representative of the Estate of Brad Hendrix v. Chesapeake Energy Corporation; CC Forbes, LLC; Forbes Energy Services, LLC; Eagle PCO LLC; WildHorse Resource Management Company, LLC,* Cause No. DC-20-06798, in the 298th District Court for Dallas County, Texas.

3.  *Omar Balboa v. A&L Hot Oil Services, Inc., SDS Petroleum Consultants, LLC, Chesapeake Energy Corporation, Forbes Energy Services, LTD., Forbes Energy Services, LLC, CC Forbes, LLC, Eagle PCO, LLC,* Cause No. DC-20-06888, in the 192nd District Court for Dallas County, Texas.

4.  *Joe Eric Cabrera v. Chesapeake Operating, L.L.C.; Chesapeake Energy Corporation, SDS Petroleum Consultants, L.L.C; A&L Hot Oil Service, Inc., Eagle PCO, LLC,* Cause No. DC-20-06894, in the 192nd Judicial District Court for Dallas County, Texas.

5.  *Kevin Mirelez v. Chesapeake Operating, L.L.C.; Chesapeake Energy Corporation, SDS Petroleum Consultants, L.L.C.; A&L Hot Oil Service, Inc.; Eagle PCO, LLC,* Cause No. DC-20-06884, in the 192nd District for Dallas County, Texas.

6.  *Miguel Carrillo v. Chesapeake Operating, L.L.C.; Chesapeake Energy Corporation, SDS Petroleum Consultants, L.L.C.; A&L Hot Oil Service, Inc.; Eagle PCO, LLC,* Cause No. DC-20-06892, in the 95th Judicial District for Dallas County, Texas.

7.  *Madison Hendrix v. Chesapeake Energy Corporation, et al.,* Cause No. DC-20-06798, in the 298th District Court of Dallas County, Texas.

8.  *Linda Milanovich v. Chesapeake Operating, L.L.C. and Chesapeake Operating Corporation,* Cause No. 29969, in the 335th District Court for Burleson County, Texas.

9.  *Christopher Wilson v. Chesapeake Energy Corporation, et al.,* Cause No. 20-15646, in the 95th District Court for Dallas County, Texas.

In all of these cases, Eagle PCO is seeking to cover any losses through its insurance coverage and by seeking indemnity and contribution claims against Chesapeake Energy Corporation and other tortfeasors. Due to the nature of these claims and the fact that Chesapeake Energy and its affiliates are in their own bankruptcy proceeding,[2] it is likely that claims will be made against Eagle PCO's

---

[2] *In re Chesapeake Energy Corp.*, No. 20-33233, Jointly Administered, United States Bankruptcy Court, Southern District of Texas.

Bankruptcy Estate. The most immediate effect of this incident was Eagle PCO's insurance premiums more than doubled.

Second, 2020 saw a sharp decline in oil prices due to world-wide overproduction. Third, in March 2020, demand for oil collapsed when the world went on lockdown in response to the SARS CoV-2 pandemic.

The Debtor had the ability to sustain its business operations through one or two of these events, but it could not sustain all three and maintain a positive cash flow without the need for restructuring.

## B.   Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit A**.

The Debtor does not believe that liquidation under Chapter 7 would be in the best interest of the creditors and the conversion of the case to a case under Chapter 7 would result in the loss of the going concern value of the Debtor as well as additional administrative expenses attributable to the statutory trustee fees and professional fees for professionals that would have to be retained by a Chapter 7 Trustee.

In a Chapter 7 liquidation, the Debtor believes that all of the proceeds would go to secured creditors and no unsecured creditors would receive payment.

## C.   Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

Prior to confirmation, Debtor intends to obtain approval to obtain $600,000 in debtor-in-possession financing ("DIP financing") from AEP, which has executed a nonbinding letter of intent to provide this interim financing. Post confirmation, the Debtor intends to use any remaining DIP financing in furtherance of effectuating this Plan.

Post-confirmation, AEP will invest $150,000, which will be dedicated to the payment of general unsecured claims.

On the Effective Date of the Plan, the assets of the Estate, with the exception of cash, cash equivalents, and Retained Claims, will be transferred to a new entity, Talon Pressure Control, LLC. A projection of its income is attached as **Exhibit B**. The Debtor does not believe that there will be a material amount of Disposable Income as that term is defined in the Bankruptcy Code.

**In preparing this Plan, the Debtors relied on financial data derived from their books and records and various assumptions regarding the Debtors' business. While the Debtors believe**

that such financial information fairly reflects the financial condition of the Debtors as of January 7, 2021 and that the assumptions regarding future events reflect reasonable business judgments, no representations or warranties are made as to the accuracy of the financial information contained herein or assumptions regarding the Debtors' business or their future results or operations. The Debtors expressly caution readers not to place undue reliance on any forward-looking statements contained herein.

The Debtors are making the statements and providing the financial information contained in this Plan as of January 7, 2021 unless otherwise specifically noted, and there is no assurance that the statements contained herein will be correct at any time after such date. Although the Debtors may subsequently update the information in this Plan, the Debtors have no affirmative duty to do so, and expressly disclaim any duty to publicly update any forward-looking statements, whether as a result of new information, future events, or otherwise. Holders of Claims reviewing this Plan should not infer that, at the time of their review, the facts set forth herein have not changed since this Plan was filed. Information contained herein is subject to completion, modification, or amendment.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## II.
## Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of Eagle Pressure Control, LLC and Eagle PCO LLC (the *Debtor*) from the infusion of capital and extension of loans from its majority owner, Aspen Energy Partners, LLC.

This Plan provides for:

- 1 class of priority claims;

- 10 classes of secured claims;

- 1 classes of non-priority unsecured claims; and

- 1 class of equity security holders

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 9.76 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

### III.
### Classification of Claims and Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

| | |
|---|---|
| **Class 1** | All allowed claims entitled to priority under 11 U.S.C. § 507(a) (except administrative expense claims under 11 U.S.C. § 507(a)(2) and priority tax claims under 11 U.S.C. § 507(a)(8). |
| **Class 2A** | The claim of Midland Central Appraisal District, to the extent allowed as a secured claim under 11 U.S.C. § 506. |
| **Class 2B** | The claim of Grimes County Appraisal District, to the extent allowed as a secured claim under 11 U.S.C. § 506. |
| **Class 2C** | The claim of the Atascosa County Tax Office, to the extent allowed as a secured claim under 11 U.S.C. § 506 |
| **Class 2D** | The claim of the Tarrant County Tax Assessor–Collector, to the extent allowed as a secured claim under 11 U.S.C. § 506 |
| **Class 2E** | The claims of Ford Motor Credit Company LLC, to the extent allowed as a secured claim under 11 U.S.C. § 506. |
| **Class 2F** | The claim of Bestway Oilfield, to the extent allowed as a secured claim under 11 U.S.C. § 506. |
| **Class 2G** | The claim of CIT Bank N.A., to the extent allowed as a secured claim under 11 U.S.C. § 506. |
| **Class 2H** | The claim of De Lage Landen, to the extent allowed as a secured claim under 11 U.S.C. § 506 |
| **Class 2I** | The claim of Extreme Machining Services, to the extent allowed as a secured claim under 11 U.S.C. § 506 |
| **Class 2J** | The claim of Aspen Energy Partners, LLC, to the extent allowed as a secured claim under 11 U.S.C. § 506. |
| **Class 3** | All other non-priority unsecured claims allowed under 11 U.S.C. § 502. |
| **Class 4** | Equity interests of the Debtor. |

Certain claims may be in multiple classes.

**IV.**
**Treatment of Administrative Expense Claims, Priority Claims, and**
**Quarterly and Court Fees**

### A.  Unclassified claims

Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

### B.  Administrative expense claims

Subject to Court approval of a fee application(s), each holder of an administrative expense claim allowed under 11 U.S.C. § 503, will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Debtor anticipates there will be two administrative expense claims made by: (1) Pendergraft & Simon, LLP, counsel for the Debtor-in-Possession, and (2) Drew McManigle, the Subchapter V Trustee. Any claims for administrative expenses will require the submission of a fee application and approval of the said fee application by the Bankruptcy Court before any claim can be paid.

The Debtor anticipates that administrative claims will be as follows:

| Claimant | Amount |
|---|---|
| Pendergraft & Simon, LLP | tbd |
| Drew McManigle | tbd |
| Total | tbd |

In the event any administrative fee has not been approved by the Court by the Effective Date, the Debtor will hold such amount in reserve until approval.

### C.  Priority tax claims

Each holder of a priority tax claim will be paid in in full, on the Effective Date. The Debtor has five types of priority tax claims described below.

### 1.  Texas Ad Valorem Taxes

Eagle PCO LLC has the following claims for ad valorem taxes:

| Taxing Authority | Amount |
|---|---|
| Midland County Central Appraisal District | $40,168.41 |
| Grimes County Central Appraisal District | 120,559.70 |
| Atascosa County Tax Office | 137,790.58 |

| Taxing Authority | Amount |
|---|---|
| Tarrant County Tax Assessor-Collector | 1,105.37 |
| TOTAL | $299,624.06 |

These allowed tax claims are entitled to priority under 11 U.S.C. § 507(a)(8)(B). These allowed tax claims are also secured by a first-in-priority, statutory lien on all of the Debtor's assets pursuant to Tex. Tax Code § 32.01.

Allowed amounts are subject to change because the bar date for the filing of governmental claims is May 10, 2021.

All ad valorem taxes will be paid in full at the Effective Date. None of the Ad valorem taxes due to taxing authorities are impaired.

## 2. New Mexico sales taxes

The New Mexico Taxation and Revenue Department has an allowed tax claim in the amount of $1,395.78 for unpaid sales taxes on the Petition Date. The allowed amount is subject to change because the bar date for the filing of governmental claims is May 10, 2021.

This claim is entitled to priority under 11 U.S.C. § 507(a)(8)(C).

All sales taxes will be paid in full at the Effective Date. None of the sales taxes due to taxing authorities are impaired.

## 3. Texas sales taxes

The Texas Comptroller of Public Accounts has an allowed tax claim in the amount of $84,277.48 for unpaid sales taxes on the Petition Date. The allowed amount is subject to change because the bar date for the filing of governmental claims is May 10, 2021.

This claim is entitled to priority under 11 U.S.C. § 507(a)(8)(C).

All sales taxes will be paid in full at the Effective Date. None of the sales taxes due to taxing authorities are impaired.

## 4. Bluebonnet Ground Water Conservation District

The Bluebonnet Ground Water Conservation District has an allowed claim for $13.38, representing fees for water well permits. This claim qualifies for payment in the same manner as priority claims under 11 U.S.C. § 507(a)(8)(E).

The amount of the allowed claim is subject to adjustment because no proof of claim has been filed to date, and the bar date for governmental claims is May 10, 2021.

On the Effective Date, this claim will be paid in full.

**5.   Deferred Payroll Taxes**

Under the CARES Act, Eagle PCO LLC deferred the employer's portion of Social Security payroll taxes from April 5, 2020 through the Petition Date—November 6, 2020. *See* Pub. L. no. 116-136, § 2302, 134 Stat. 281, 351–52 (2020). At the Petition Date, Eagle PCO LLC estimates the allowed claim for these deferred Social Security payroll taxes to be $113,879.66. This amount is subject to change because the bar date for the filing of governmental claims is May 10, 2021.

Following the Petition Date, Eagle PCO LLC ceased deferring payment of Social Security payroll taxes even though these taxes could continue to be deferred under the CARES Act through December 31, 2020.

All deferred payroll taxes will be paid in full at the later of: (a) the Effective Date, (b) of the date such deferred taxes are last due, without penalty, under applicable non-bankruptcy law. None of the deferred payroll taxes due to the IRS are impaired.

**D.   Statutory fees**

All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date of this Plan have been paid or will be paid on the Effective Date.

**E.   Prospective quarterly fees**

Under Subchapter V, the quarterly fees described in 28 U.S.C. § 1930(a)(6) are not paid. Nonetheless, to the extent any quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) does accrue, it will be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.

**V.**

**Treatment of Claims and Interests Under the Plan**

Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1 – Priority claims** excluding those in Section IV. | Unimpaired | Debtor has a single priority claim in the amount of $1,079.04 for wages due to a former employee, John Rando, who resigned shortly after the Petition Date. This claim is entitled to priority under 11 U.S.C. § 507(a)(4). |
| | | The Debtor does not anticipate having any other allowed priority claims. |
| | | To the extent a timely-filed priority claim is allowed, such claim will be paid in full on the Effective Date of this Plan or the date on which such claim is allowed by a final non-appealable order. |
| | | Any allowed priority claims in Class 1 will be paid after any Court-approved administrative expense claims and priority tax claims are paid in full. |
| | | Creditors in this class will receive 100 percent of their allowed claims. |
| **Class 2A – Secured claim** of Midland Central Appraisal District | Unimpaired | This creditor has an allowed claim for $40,168.41, which is secured by all of Eagle PCO LLC's taxable personal property located within Midland County, Texas under Tex. Tax Code § 32.01. |
| | | This claim also qualifies for payment in the same manner as priority claims under 11 U.S.C. § 507(a)(8)(B). |
| | | The amount of the allowed claim is subject to adjustment because proofs of claims have not been filed by all taxing authorities in which Midland Central Appraisal District collects taxes for, and the bar date for governmental claims is May 10, 2021. |
| | | On the Effective Date, this claim will be paid in full. |

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| **Class 2B – Secured claim** of Grimes County Appraisal District | Unimpaired | This creditor has an allowed claim for $120,559.70, which is secured by all of Eagle PCO LLC's taxable personal property located within Grimes County, Texas under Tex. Tax Code § 32.01.<br><br>This claim also qualifies for payment in the same manner as priority claims under 11 U.S.C. § 507(a)(8)(B).<br><br>On the Effective Date, this claim will be paid in full. |
| **Class 2C – Secured claim** of Atascosa County Tax Office | Unimpaired | This creditor has an allowed claim for $137,790.58, which is secured by all of Eagle PCO LLC's taxable personal property located within Atascosa County, Texas under Tex. Tax Code § 32.01.<br><br>This claim also qualifies for payment in the same manner as priority claims under 11 U.S.C. § 507(a)(8)(B).<br><br>The amount of the allowed claim is subject to adjustment because no proof of claim has been filed to date, and the bar date for governmental claims is May 10, 2021.<br><br>On the Effective Date, this claim will be paid in full. |
| **Class 2D – Secured claim** of Tarrant County Tax Assessor–Collector | Unimpaired | This creditor has an allowed claim for $1,105.37, which is secured by all of Eagle PCO LLC's taxable personal property located within Tarrant County, Texas under Tex. Tax Code § 32.01.<br><br>This claim also qualifies for payment in the same manner as priority claims under 11 U.S.C. § 507(a)(8)(B).<br><br>The amount of the allowed claim is subject to adjustment because no proof of claim has been filed to date, and the bar date for governmental claims is May 10, 2021.<br><br>On the Effective Date, this claim will be paid in full. |

| Class | Impairment | Treatment |
|---|---|---|
| **Class 2E – Secured claim** of Ford Motor Credit Company | Unimpaired | This creditor has an allowed claim for $1,125,771.92, which is secured by the motor vehicles listed in **Exhibit D**.<br><br>There was no pre-petition monetary default, and the Debtor has been making all regular monthly installment payments as adequate protection following the Petition Date. *See* Order dated Dec. 22, 2020 (ECF no. 47).<br><br>On the Effective Date, Talon Pressure Control, LLC will continue making payments in accordance with the pre-petition contracts between the Debtor and the Creditor, and the Creditor will retain its purchase-money security interests. |

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| **Class 2F – Secured claim** of Bestway Oilfield | Unimpaired as to secured amounts/ Impaired as to unsecured amounts | This creditor has an allowed claim for $270,976.04, which is secured by a lien on 24 valves as set forth in a UCC-1 financing statement filed December 24, 2019. Per the proof of claim, the value of this collateral is $168,000.00. |
| | | Debtor intends to object to this proof of claim. Debtor believes there is $42,000.00 due on an installment agreement for the purchase of 24 valves as described above, and the value of this collateral is $27,000. The remaining claim of $228,976.04 should be a general, unsecured claim for various invoices from Jan. 20, 2020–Oct. 22, 2020. |
| | | Subject to amounts ultimately allowed under an amended claim or order of the Court, Talon Pressure Control, LLC will pay $27,000 after the Effective Date, representing the value of the collateral, at which time, the Debtor will be entitled to a release of any lien. |
| | | The remaining allowed claim will be treated as a general, unsecured claim in Class 4. |
| | | This claim is unimpaired to the extent of the value of the collateral securing payment, and this claim is impaired to the extent the amount of the allowed claim exceeds the value of the collateral. |
| **Class 2G – Secured claim** of CIT Bank N.A. | Unimpaired | This creditor has an allowed claim for $27,410.25, which is secured by a motor vehicle lien on a 2018 Ford F250 truck (VIN# 1FT7W2BTXJEC26423). The value of the collateral is $27,410.25. |
| | | On the Effective Date, the Debtor will surrender the collateral to the Creditor if the collateral has not already been surrendered. |

| Class | Impairment | Treatment |
|---|---|---|
| **Class 2H – Secured claim** of De Lage Landen | Unimpaired | This creditor has an allowed claim for $324,163.34, which is secured by certain tangible and intangible personal property described in a UCC-1 financing statement filed January 29, 2019. |
| | | The amount of the allowed claim and the value of the collateral is subject to adjustment because no proof of claim has been filed to date, and the bar date for claims is March 8, 2021. |
| | | There was no pre-petition monetary default, and the Debtor has been making all regular monthly installment payments as adequate protection following the Petition Date. |
| | | On the Effective Date, Talon Pressure Control, LLC will continue making payments in accordance with the pre-petition contracts between the Debtor and the Creditor, and the Creditor will retain its purchase-money security interest. |
| **Class 2I – Secured claim** of Extreme Machining Services | Unimpaired | This creditor has an allowed claim for $33,668.76, which is secured by equipment described in UCC-1 financing statements filed April 25, 2018 and June 25, 2018. |
| | | The amount of the allowed claim and the value of the collateral is subject to adjustment because no proof of claim has been filed to date, and the bar date for claims is March 8, 2021. |
| | | Any pre-petition or post-petition monetary default will be cured on the Effective Date. On the Effective Date, Talon Pressure Control, LLC will continue making payments in accordance with the pre-petition contracts between the Debtor and the Creditor, and the Creditor will retain its security interest. |

| Class | Impairment | Treatment |
|---|---|---|
| **Class 2J – Secured claim** of Aspen Energy Partners, LLC | Impaired | Aspen Energy Partners, LLC has an allowed, secured claim against Eagle Pressure Control LLC in the amount of $3,450,640.47. Collateral for this claim is a lien on all assets of Aspen Energy Partners, LLC, which is Eagle PCO LLC. |
| | | The amount of the allowed claim and the value of the collateral is subject to adjustment because no proof of claim has been filed to date, and the bar date for claims is March 8, 2021. |
| | | For collateral that is transferred to Talon Pressure Control, LLC, the lien on such collateral shall continue in effect. Otherwise, the lien on collateral that remains part of the Estate shall be stripped of any lien or encumbrance. |
| | | On the Effective Date, this debt will be converted to equity ownership in the reorganized Debtor. |
| **Class 3 – All other non-priority unsecured claims** | Impaired | All allowed general unsecured claims will be paid a pro rata share of their claims, in one, or more, deferred cash payments upon the later of the Effective Date of this Plan or the date on which such claim is allowed by a final non-appealable order. A listing of all claims in Class 3 are shown in **Exhibit C**. |
| | | Claims in Class 4 will be paid after claims in Classes 1, 2, and 3 are paid in full. Moreover, claims in Class 4 include numerous disputed and/or unliquidated claims. |
| | | Creditors in this class are projected to receive 9.76 percent of their allowed claims on a pro rata basis. |

| Class | Impairment | Treatment |
|---|---|---|
| **Class 4 – Equity security holders of the Debtor** | Impaired | The existing equity membership of the Debtor will be terminated. New equity membership in will be granted to Aspen Energy Partners, LLC in exchange for the conversion of its existing debt to equity and cash investments for the funding of this Plan of Reorganization. |

## VI.
## Allowance and Disallowance of Claims

### A.   Disputed claims

A *Disputed Claim* is a claim that has not been allowed or disallowed by a final, non-appealable order, and as to which either:

1. a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

2. no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

### B.   Objections to claims

Claims objections must be made by:

1. For a proof of claim filed prior to the Effective Date, not later than 30 days after the Effective Date; or

2. For a proof of claim filed after the Effective Date but before the Bar Date, not later than 30 days after the date the proof of claim is filed.

### C.   Interim distributions on allowed claims

Interim distributions on allowed claims will be made a on a *pro rata* basis based all undisputed, allowed claims, plus the amounts claimed in any proofs of claims that are subject to claim objections. Once all claims objections are resolved, a final distribution on allowed claims will be made.

### D   Delay of distributions on a disputed claim

No distribution will be made on account of a disputed claim unless such claim is allowed by a final, non-appealable order.

### E. Anticipated claims objections

### 1. Objections related to personal injury claims

Numerous personal injury claims have been asserted against Eagle PCO arising from an oil well explosion on January 29, 2020 in Burleson County, Texas. Claimants include, but are not necessarily limited to: (a) Joe Eric Cabrera, (b) Kevin Lee Mirelez, (c) Linda Milanovich, (d) Madison Hendrix, (e) Miguel Carillo, (f) Norma Lynn Maldonado, and (g) Omar Balboa.

All of these claims are disputed as to liability and all claimed damages are unliquidated. Eagle PCO believes that Chesapeake Energy Corporation, or one of its affiliates, is contractually liable for all losses and injuries because it was the operator of the subject well. Additionally, Eagle PCO may seek indemnity from other third parties, including insurers. Moreover, the nature of the damages that are being claimed are unliquidated.

To date, none of these claimants has filed a proof of claim; however, the Debtor anticipates objecting to any proof of claim that is filed.

### 2 Other anticipated claim objections

The Debtor anticipates filing the following claim objections:

1. Creditor, Grant Blake, filed a proof of claim seeking unliquidated damages in the amount of $300,000. Debtor anticipates filing an objection to the proof of claim the basis that liability is disputed and the claimed damages are unliquidated.

2. Creditor, Bestway Oilfield, filed a proof of claim seeking a secured claim in the amount of $270,966.04, which is secured by 24 valves with an alleged value of $168,000.00. Debtor objects to the classification of this claim as well as the value of the collateral, and Debtor believes: (a) only $42,000.00 of the claim is potentially a secured claim related to a transaction in 2019; (b) the value of the collateral is $27,000.00; and (c) the remaining $228,976.04 is a general, unsecured claim for unpaid invoices that came due during 2020.

The Debtor reserves the right to file other claim objections, especially in response to proofs of claims that may be filed prior to the applicable Claims Bar Dates.

### F. Settlement of disputed claims

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## VII.
## Provisions for Executory Contracts and Unexpired Leases

### A.   Assumed executory contracts and unexpired leases

The Debtor will assume the following executory contracts and unexpired leases:

> The Master Service Agreements ("MSA") listed in Exhibit F. These MSAs are the exclusive means by which the Debtor conducts business with its customers, and the MSAs govern all aspects of the relationship between the Debtor and its customers, from the scope of work to required insurance coverage. Upon information and belief, the Debtor is no in default under any MSA listed in Exhibit F.

Moreover, on the Effective Date, these executory contracts and unexpired leases will be assigned to Talon Pressure Control, LLC.

Objections to the assumption and assignment of the foregoing unexpired leases and/or executory contracts, the proposed cure of any defaults, or the adequacy of assurance of performance must be filed and served within the deadline for objecting to confirmation of the Plan, unless the Court has set an earlier time.

### B.   Rejected executory contracts and unexpired leases

The Plan constitutes a motion to reject any other executory contracts or unexpired leases not listed in Paragraph (A), *supra*. If the rejection by the Debtor pursuant to the Plan or otherwise of an executory contract or unexpired lease results in a Claim that is not theretofore evidenced by a timely proof of Claim or a proof of Claim that is deemed to be filed timely under applicable law, then such Claim will be forever barred and unenforceable against the Debtor's Bankruptcy Estate, unless a proof of Claim is filed with the clerk of the Court and served on counsel for the Debtor within thirty (30) days after entry the Confirmation Order.

Objections to the proposed rejection of any executory contract or unexpired lease must be filed and served within deadline for objecting to confirmation of the Plan, unless the Court has set an earlier time.

## VIII.
## Post-Confirmation Management

Post-Confirmation, management of the Debtor shall be vested in those Officers and Managers existing on the Petition Date.

## IX.
## Means for Implementation of the Plan

### A.   Financial Commitment by Aspen Energy Partners, LLC

Aspen Energy Partners, LLC ("AEP") is committed to the funding described in **Exhibit E** and more fully herein.

### 1.   DIP Financing

Prior to the Confirmation Date, AEP will provide debtor-in-possession financing, subject to the entry of an Order allowing the same, in the amount of $600,000. This financing is intended for the financing of the Debtor's operations from January 1, 2021 through the Effective Date and to assure Debtor's ability to pay those claims in Classes 1 through 2 which must be paid in full by the Effective Date.

### 2.   Capital Contributions

Upon the Effective Date, AEP will pay Debtor $150,000 for payment of allowed claims in Classes 3 and 4.

### B.   Valuation of Collateral

For claims in Classes 2A through 2J, it will be necessary for the Court to value the collateral prior to, or at, Confirmation. If a timely proof of claim is filed, the amount of the claim will be determined through the claims allowance process. Otherwise, the amount scheduled in this Plan will control. If the Court orders a different amount than is shown above as "Collateral Value," the Plan shall be deemed amended to reflect that Collateral Value without the requirement of the filing of an amended Plan.

### C.   Retained claims

Except as otherwise provided in the Plan, all causes of action that the Debtor and the Estate may hold against any person or entity shall be retained by the Bankruptcy Estate and shall be prosecuted the Debtor-in-Possession, after the Effective Date, to the extent necessary to pay all administrative expense claims, priority tax claims, allowed claims in Classes 1 through 3.

### 1.   Preferences

Pursuant to the Bankruptcy Code, the Debtor may recover certain preferential transfers of property, including cash, made while insolvent during the 90 days immediately prior to the filing of the petition with respect to pre-existing debts, to the extend the transferee received more than it would have in respect to the pre-existing debt had the Debtor been liquidated under Chapter 7 of the Bankruptcy Code. In the case of "insiders," the Bankruptcy Code provides for a one-year look back preference period. There are certain defenses these actions such as transfers made in the ordinary

course of the Debtor's business. Additionally, a defense may exist if the transferee extended credit after the transfer.

Potential recoveries of preference payments may exist, and the Reorganized Debtor retains the right to pursue those recoveries post-confirmation.

**2. Fraudulent transfers**

Under the Bankruptcy Code and state law, the Debtor may recover certain transfers of property, including the grant of a security interest in property, made while insolvent or which rendered it insolvent.

Potential recoveries of fraudulent transfers may exist, and the Reorganized Debtor retains the right to pursue those recoveries post-confirmation.

**3. Indemnity and contribution claims**

The Debtor further retains the right to pursue all claims for indemnity and contribution from Chesapeake Energy Corporation, and its affiliates, as well as C C Forbes Company, LOP, A&L Hot Oil Service, Inc., SDS Petroleum Consultants, LLC, and any of their insurers in regards to the January 29, 2020 fire and explosion described in Section I(2), *supra*.

**D. Distributions to Holders of Allowed Claims**

**1. Distributions by Debtor under a consensual Plan**

If the Plan is confirmed as a consensual plan, the service of the Subchapter V Trustee shall terminate and all Plan payments of allowed claims shall be made by the Debtor, and the Debtor shall file periodic reports with the Court detailing the monies coming into the Estate and being paid out to creditors.

**2. Distributions by Subchapter V Trustee under a non-consensual Plan**

If the Plan is confirmed as a nonconsensual plan, the Subchapter V Trustee shall make all payments to holders of allowed claims.

**3. Distribution Process**

Distributions to holders of Allowed Claims will be made to the address of each such holder as set forth on the proof of claims filed by these holders of Allowed Claims or the last known address if no proof of claim was filed, unless Debtor received written notification of a change in address. If the holder's Distribution is returned undeliverable, it will be treated as a disputed claim. Debtor or the Subchapter V Trustee will file a notice of undeliverable Distribution with the Court within 30 days of the returned Distribution. All claims for undeliverable Distributions must be made no later than 45 days from the date of the filing of the notice, and after such date, the unclaimed Distribution will be distributed to holders of Allowed Claims on a *pro rata* basis.

Checks issued with respect to Distributions for Allowed Claims will be null and void if not negotiated 90 days after the date of issuance. Distributions with respect to unnegotiated checks will treated as a disputed claim. Debtor or the Subchapter V Trustee will file a notice of undeliverable Distribution with the Court within 30 days of the returned Distribution. All claims for undeliverable Distributions must be made no later than 45 days from the date of the filing of the notice, and after such date, the unclaimed Distribution will be distributed to holders of Allowed Claims on a *pro rata* basis.

### E.   Surrender of Collateral

The following collateral will be surrendered to CIT Bank, N.A. in satisfaction of its allowed claim, by the Effective Date, if such surrender has not already taken place:

> 2018 Ford F250 truck (VIN 1FT7W2BTXJEC26423)

**X.**
**General Provisions**

### A.   Definitions and rules of construction

The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in the Code are used in this Plan and they are supplemented by the following definitions.

"***Administrative Claim***" or "***Administrative Priority Claim***" means a Claim that is entitled to priority under 11 U.S.C. §§ 326, 327, 330, 503(b)(1)–503(b)(9), 506(c), or 1103 asserted in this case, which Claims are described in Section VI of this Disclosure Statement and treated in Section VI of this Disclosure Statement and Plan.

"***Administrative Claim Bar Date***" means the date set by the Court by which administrative claims entitled to priority under 11 U.S.C. §§ 326, 327, 330, 503(b), 506(c), or 1103 asserted in this case, including substantial contribution claims, must be filed. Debtor will request that the Court set the Administrative Claim Bar Date by separate order of the Court.

"***Allowed Claim***" means a Claim or any portion thereof:

1. that has been allowed by a Final Order,

2. that either has been Scheduled as a liquidated, non-contingent, undisputed Claim in an amount greater than zero in the Debtor's Schedules, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy Court, or is the subject of a timely filed proof of Claim as to which either no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the

Bankruptcy Court, or any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or

3.  that is expressly allowed in a liquidated amount in the Plan; provided, however that with respect to an administrative claim.

"*Allowed Claim*" further means an administrative claim as to which a timely request for payment has been made in accordance with this Plan—if such written request is required—or other administrative claim, in each case as to which:

1.  a timely objection has not been filed, or

2.  a timely objection is filed, and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order.

"***Claim***" means a claim against any of the Debtor's Bankruptcy Estate, whether or not asserted, as defined in 11 U.S.C. § 101(5).

"***Claim Bar Date***" means the last date holders of non-administrative claims that are not governmental units may file claims against the Debtor's Bankruptcy Estate—March 8, 2021.

"***Confirmation***" means entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

"***Confirmation Date***" means the date of entry by the Bankruptcy Court of the Confirmation Order.

"***Confirmation Order***" means the order entered by the Bankruptcy Court confirming the Plan.

"***Disposable Income***" means the income that is received by the Debtor and that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor.

"***Effective Date***" means the date when the Confirmation Order becomes a Final Order.

"***Final Order***" means an order or judgment of the Bankruptcy Court, as entered on the docket in the Debtor's Bankruptcy Case, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

"***Government Claim Bar Date***" means the last date holders of non-administrative claims that are governmental units may file claims against the Debtor's Bankruptcy Estate—May 10, 2021.

"***Impaired***" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of 11 U.S.C. § 1124.

"*Lawsuits*" mean any, or all, of the lawsuits listed on Article I(A)(2), see pages 7–8, *supra*, as well as any other claims arising from, or related to, the incident of January 29, 2020 in Burleson County, Texas at the Daniel H. Wendland 1H oil well, which was operated by Chesapeake Energy Corporation, or one of its affiliates.

"*Priority Claim*" means a Claim asserted under 11 U.S.C. §§ 507(a)(3)–507(a)(10) against the Debtor's Bankruptcy Estate.

"*Secured Claim*" means a Claim, other than a setoff claim, that is secured by an encumbrance, or the proceeds of the sale of such property, in which the Debtor has an interest, to the extent of the value, as of the effective date or such later date as is established by the Bankruptcy Court, of such interest or encumbrance as determined by a Final Order of the Bankruptcy Court pursuant to 11 U.S.C. § 506 or as otherwise agreed upon in writing by Debtor and the holder of such Claim.

"*Subchapter V Trustee*" means the Trustee appointed pursuant to 11 U.S.C. § 1183. In this case, the United States Trustee appointed Drew McManigle to serve as Subchapter V Trustee.

"*Unimpaired Claim*" means a claim that is not an impaired claim.

"*Unsecured Claim*" shall mean a claim that is not entitled to priority under 11 U.S.C. §§ 507(a)(1)–507(a)(9), and includes deficiency claims of any of the secured creditors.

## B.   Effective Date

The effective date of this Plan is the first business day following the date that is 14 days after the entry of the Confirmation Order. If, however, a stay of the Confirmation Order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated

## C.   Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

## D.   Binding effect

The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

## E.   Headings

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**F.   Controlling effect**

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**G.   Retention of jurisdiction**

Under 11 U.S.C. §§ 105(a) and 1142, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

    a.  Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim or Priority Claim or the resolution of any objections to the allowance or priority of Claims or Interest;

    b.  Hear and determine all applications for compensation and reimbursement of expenses of Administrative Claims;

    c.  Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the liquidation or allowance of any Claims arising therefrom;

    d.  Effectuate performance of and payments under the provisions of the Plan;

    e.  Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

    f.  Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

    g.  Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

    h.  Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

i.  Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

j.  Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

k.  Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Debtor's Bankruptcy Case;

l.  Hear and determine matters concerning state, local, and federal taxes in accordance with 11 U.S.C. §§ 346, 505, and 1146;

m.  Hear and determine all matters related to the property of the Debtor's Bankruptcy Estate from and after the Consummation Date;

n.  Hear and determine such other matters as may be provided in the Confirmation Order and as may be authorized under the provisions of the Bankruptcy Code; and

o.  Enter a final decree closing the Debtor's Bankruptcy Case.

## XI.
## Effect of Confirmation

Upon confirmation, the provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept the Plan. On or after the Effective Date, all holders of Claims shall be precluded and enjoined from asserting any Claim (i) against the Debtor based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan and (ii) any derivative claims, including against third parties asserting alter ego claims, fraudulent transfer claims or any other type of successor liability.

Except as expressly provided in the Plan or Confirmation Order, all persons who have held, hold, or may hold Claims against the Debtor are permanently enjoined on or after the Effective Date from (i) commencing or continuing in any matter any action or other proceeding of any kind against the Debtor, or its property, with respect to any such Claim, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtor or its property, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or its property with respect to such claim, (iv) asserting any right of subrogation of any kind against any objection due to the Debtor or its property with respect to any such claim, and (v) asserting any right of setoff or recoupment against the Debtor kind against the Debtor. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to section 106, if any, or section

362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

## XII.
## No Discharge

In accordance with 11 U.S.C. § 1141(d)(3), the Debtor will not receive any discharge of debt in this bankruptcy case.

## XIII.
## Other Provisions

### A.   General

Except as otherwise expressly provided in the Plan, all entities who have held, hold or may hold Claims against, or Interest in, the Debtor's Bankruptcy Estate or the Debtor will be permanently enjoined, on and after the Consummation Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor or the Debtor's Bankruptcy Estate, (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtor or the Debtor's Bankruptcy Estate on account of any such Claim and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or the Debtor's Bankruptcy Estate on account of any such Claim; provided, however, notwithstanding any provision of the Plan to the contrary, each holder of a Claim shall be entitled to enforce his, her or its rights under the Plan and Plan Documents.

### B.   Injunctions related to Debtor's members

The members comprising the interest holders in Class 4 are prohibited from making any changes to the management of the Debtor until all provisions of the Confirmed Plan have been satisfied.

Until the completion of all payments required under the Plan, if a distribution is made to a shareholder for the purpose of paying the Debtor's federal income taxes, the Debtor shall file a notice of such proposed distribution, including the amount of such proposed distribution and a copy of the applicable IRS Form K-1s with the Court and serve a copy on those creditors entitled to notice under Bankruptcy Rule 9013 and applicable Bankruptcy Local Rules. If no objection is made within 14 days, such distribution shall be allowed without further Order of the Court.

### C.   Exculpation and Limitation of Liability

Neither the Debtor's Bankruptcy Estate, nor the Debtor, nor any present or former employees, advisors, attorneys, or agents will have or incur any liability to any holder of a Claim or an Interest,

or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the solicitation of votes to accept the Plan, the Debtor's Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or as provided by the Plan or the Plan Documents, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

No holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, will have any right of action against the Debtor's Bankruptcy Estate or the Debtor, or any of their respective present or former directors, officers, employees, advisors, attorneys, or agents, for any act or omission in connection with, relating to, or arising out of the solicitation of votes to accept the Plan, or the pursuit of confirmation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except as provided by the Plan or by law.

## D.   Vesting of Assets

With the exception cash, cash equivalents, and Retained Claims, all property of the Estate shall vest with a new entity, Talon Pressure Control, LLC, a Delaware limited liability company, upon Confirmation of the Plan, free and clear of all liens, claims, and encumbrances except for those liens that are validly perfected by a purchase-money or other contractual lien, perfected under applicable non-bankruptcy law prior to the Petition Date, and any statutory lien granted to a government unit for taxes, permits, or other fees. Such liens that survive include, but are not necessarily limited to, validly perfected motor vehicle liens, validly perfected UCC-1 financing statements, validly perfected real estate deeds of trust and mortgage loans, and tax liens. No claim, lien, or encumbrance arising from the Lawsuits or any other unliquidated claim made in any contested matter or adversary proceeding in the Bankruptcy Court, a civil action in the District Court, or in any legal action in a state court shall attach to any of the assets vesting with Talon Pressure Control, LLC.

The sole source of any recovery of any claimant through the Lawsuits shall be from assets of the Estate.

## E.   Employment of professionals after the Effective Date

Subject to the approval of the Court under the standards set forth in 11 U.S.C. § 327, the reorganized Debtor may employ professionals to assist it in effectuating the Confirmed Plan.

## F.   Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## G. Reservations of right to amend Plan

The Debtor reserves the right to amend this Plan at any time prior to Confirmation in accordance with 11 U.S.C. § 1193(a). The Debtor reserves all rights to amend this Plan after Confirmation in accordance with 11 U.S.C. §§ 1193(b) and 1193(c).

## H. Alternative Plans of Reorganization

The proposed Plan affords the holders of Claims the maximum potential for realization of the Debtor's assets and is in the best interest of the holders. If the Plan is not confirmed, theoretical alternatives include (i) continuation of the Chapter 11 case; (ii) alternative plans of reorganization; (iii) liquidation of the Debtor under Chapter 7; and (iv) dismissal of the Chapter 11.

If the Plan is not confirmed, other parties in interest could attempt to propose a different plan or plans. However, such plans, might involve other forms of reorganization or liquidation of the Debtor's operations and assets. Any other alternative plans, however, would likely result in additional administrative expenses to the Estate and would provide little to no benefit.

DATED: January 7, 2021.

/s/ Jennifer Black
Jennifer Black
Chief Financial Officer
Eagle Pressure Control LLC


/s/ Jennifer Black
Jennifer Black
Chief Financial Officer
Eagle PCO LLC

*Plan Proponents*


**PENDERGRAFT & SIMON, LLP**

/s/ William P. Haddock
Leonard H. Simon
  Texas Bar No. 18387400
  S.D. Tex. Adm. No. 8200
William P. Haddock
  Texas Bar No. 00793875

S.D. Tex. Adm. No. 19637
2777 Allen Parkway, Suite 800
Houston, TX 77019
Tel. (713) 528-8555
Fax. (713) 868-1267

*Counsel for Plan Proponents*

Exhibit A
**Eagle PCO LLC**
**Chapter 7 Liquidation Analysis**
Based upon Debtor's Schedules with adjustments for Post-Petition Changes

Note

a

**ESTIMATED AMOUNTS RELIAZABLE FROM LIQUIDATION OF ASSETS**

| | | |
|---|---:|---|
| Cash | $ 274,929.44 | b |
| Accounts Receivable, net | 329,732 | c |
| Inventory | 280,350 | d |
| Office equipment, including computer equipment | 9,293 | e |
| Machinery, equipment and vehicles | 3,733,839 | e |
| Real Property | 815,300 | f |
| Intangibles and Other Property | 10 | g |
| | | |
| Total Distributable Value | $ 5,443,452.94 | |

**less: Liquidation Adjustments**

| | | | |
|---|---:|---:|---|
| Ch. 7 Trustee's fee allowed under 11 U.S.C. § 326 | $ 186,553.59 | | h |
| Trustee's Counsel and Related | 77,528 | | i |
| Cost to sell real property | 72,571 | | j |
| Collateral with no equity surrendered to creditor | 477,405 | | k |
| Wind-Down Cost | 822,290 | 1,636,347 | l |

| | | |
|---|---:|---|
| **NET LIQUIDATION PROCEEDS AVAILABLE TO SECURED CLAIMS** | $ 3,807,105.50 | |

| | | |
|---|---:|---|
| **Less Total Secured Claims** | $ 3,807,105.50 | m |
| Proceeds Available to Priority Unsecured Claims | - | |

| | | |
|---|---:|---|
| **Less: Total Priority Unsecured Claims** | 609,621 | n |
| Proceeds Available to Unsecured Creditors | - | |

**Less: Total Estimated General, Unsecured Claims**

| | | | |
|---|---:|---:|---|
| Allowed Claims per Schedules and Claims Register | $ 1,536,626.21 | | o |
| Allowance for undersecured amounts | 991,351 | | p |
| Potential unsecured lease rejection claims | 364,500 | | q |
| | | | |
| **Total Estimated General, Unsecured Claims** | | $ 2,892,477.64 | |

| | | |
|---|---:|---|
| **Estimated Percentage Payment to General, Unsecured Creditors** | 0.0% | |

## Notes

a. The Liquidation Analysis considers Debtors entering chapter 7 on December 16, 2020. The Liquidation Analysis is based on Debtor balance sheet and projections as of December 16, 2020, based on the Debtors' business plan. The cessation of business in a liquidation is likely to trigger certain claims that otherwise would not exist under a Plan absent a liquidation. Examples of these kinds of claims include various potential employee claims, unpaid chapter 11 administrative claims, and unexpired lease rejection and guarantee claims. Some of these claims could be significant and may be entitled to priority in payment over general unsecured claims.  Some of these claims are included in the Liquidation Analysis. The Liquidation Analysis does not include estimates for the tax consequences, both federal and state, that may be triggered upon the liquidation and sale events of assets. Such tax consequences may be material.  Finally, the Liquidation Analysis does not include recoveries resulting from any potential preference, fraudulent transfer, or other litigation or avoidance actions.

b. Cash consist of cash on the books as of the Liquidation Date

c. The analysis of accounts receivable assumes that the Trustee would retain certain existing staff to handle a collection effort for outstanding trade accounts receivable for the entities undergoing liquidation.  Overall recoveries of accounts assumed to range from 35% to 45% of pro forma projected current balance. Recovery on pro forma accounts receivable balances are assumed to be impacted by the termination of customer master service agreements and contracts on conversion of Debtor's chapter 11 cases to a chapter 7 liquidation, therefore the median 40% was used.

d. All inventory consists of finished goods. Value of Inventory was provided by a third party appraiser Hadco International effective November 16,  2020, completed November 25, 2020.

e. Value of the Debtor assets, based on values provided by a third party appraiser Hadco International effective November 16, 2020, completed November 25, 2020.

f. Value assed by the tax appraisal district

g. Intangibles and other property consist of an internet domain name with a net book value of $0 and a current value of debtor's interest of $10.

h. These are fees that would be payable to the trustee by the Debtor in accordance with the section 326 of the Bankruptcy Code

i. This includes fees and expenses incurred by the Trustee' legal and professional counsel associated with the wind-down of the Debtors' estates. These fees are estimated to be 1.5% of the total asset recovery value, excluding cash.

j. Cost to sell real property consist of 6% Brokerage fee, 1% title insurance, $10,000 closing cost, $2000 survey,  and $3500 Phase 1 environmental Site Assessment

k. Surrender of $370,080 of trucks to Ford Motor Credit and Surrender of $107,325 of Forklifts to De Lage Landen

l. Wind-down expenses deemed necessary to operate the Debtors during the pendency of the Chapter 7 liquidation include $321,500 in payroll and other benefits for employees who would be needed to help administer the liquidation, $300,000 in insurance and $200,790 in other operating expenses. Other operating expenses include, among other things, rent, tax expenses, and utilities.

m. Total Secured Claims include secured tax liabilities, secured guarantees, and secured line of credit, less the secured claims where collateral was surrendered to creditor

n. Represents estimated total post- petition accounts payable and accrued expenses  as of the assumed conversion date, inclusive of any accrued and unpaid professional fees.

o.  Detail listed on Schedule C

p.  Under secured amount of the secured claims listed in note l

q.  Lease rejection claim calculated using the greater of one year, or 15 percent not to exceed three years of the remaining term of the lease.

## <u>Exhibit B</u>

|                                   |    | **2021**      |    | **2022**      |    | **2023**      |
|-----------------------------------|----|---------------|----|---------------|----|---------------|
| Revenue                           | $  | 9,150,000     | $  | 14,100,000    | $  | 14,100,000    |
| EBITDA                            | $  | 12,492        | $  | 2,291,744     | $  | 2,291,744     |
|                                   |    |               |    |               |    |               |
| <u>Disposable Income</u>          |    |               |    |               |    |               |
| EBITDA                            | $  | 12,492        | $  | 2,291,744     | $  | 2,291,744     |
| Change in Working Capital         |    | (1,848,108)   |    | -             |    | -             |
| Debt Service (Existing Class 2)   |    | (591,798)     |    | (558,129)     |    | (314,781)     |
| Maintenance Capital Expenditures  |    | (360,000)     |    | (3,000,000)   |    | (3,000,000)   |
| **Disposable Income**             | $  | **(2,787,414)** | $ | **(1,266,384)** | $ | **(1,023,037)** |

Exhibit C
# Summary of General Unsecured Claims & Plan Proponent's Position on Allowance

| Creditor | Claim per Schedules Amount | Contingent | Unliquidated | Disputed | Proof of Claim* Amount | Date Filed | Objection | Plan Proponent's Position on Allowance |
|---|---|---|---|---|---|---|---|---|
| 1189 CR Eagle LLC | $ 34,057.47 | | | | | | | $ 34,057.47 |
| Absolute Control LLC | 65,860.00 | | | | | | | 65,860.00 |
| Acme Truck Line Inc | 696.32 | | | | | | | 696.32 |
| Action Specialties LLC | 840.21 | | | | | | | 840.21 |
| AirGas | 467.17 | | | | | | | 467.17 |
| Alltex Welding Supply | 5,502.23 | | | | | | | 5,502.23 |
| ALS Maverick Testing Laboratories Inc | 1,086.00 | | | | | | | 1,086.00 |
| American Express | 439,145.65 | | | | | | | 439,145.65 |
| APS Payroll | 770.85 | | | | | | | 770.85 |
| ARC Specialties | 229.12 | | | | | | | 229.12 |
| ARI | 5,911.83 | | | | | | | 5,911.83 |
| B&J Welding Supply Ltd | 197.07 | | | | | | | 197.07 |
| B&J Wholesale LLC | 12,097.36 | | | | | | | 12,097.36 |
| Bestway Oilfield † | 228,976.04 | | | | $ 270,976.04 | 11/18/2020 | Obj. | 228,976.04 |
| Blaze Sales & Service | 16,715.00 | | | | | | | 16,715.00 |
| Brandon Willard | 120.00 | | | | | | | 120.00 |
| C&W Fire and Safety Company Inc | 839.36 | | | | | | | 839.36 |
| C&W International Fabricators | 52,201.32 | | | | | | | 52,201.32 |
| CenturyLink | 2,453.87 | | | | | | | 2,453.87 |
| Charts Ltd | 686.64 | | | | | | | 686.64 |
| Cintas Corporation no 2 | 211.20 | | | | | | | 211.20 |
| CM Service Co Inc | 2,470.75 | | | | | | | 2,470.75 |
| Commercial Fleet Financing Inc | 1,693.34 | | | | | | | 1,693.34 |
| Concentra Medical Centers | 90.50 | | | | | | | 90.50 |
| Cranetech-Hoist & Crane Services of Colora | 674.13 | | | | | | | 674.13 |
| Darren Hattaway | 15.66 | | | | | | | 15.66 |
| De Lage Landen | 3,770.89 | | | | | | | 3,770.89 |
| Disa Inc | 422.87 | | | | | | | 422.87 |
| Eagle Welding Supply | 77.94 | | | | | | | 77.94 |
| Express Supply & Rental LLC | 1,664.26 | | | | | | | 1,664.26 |
| Five Star Metals Inc | 36,430.00 | | | | | | | 36,430.00 |
| Fox Metals and Alloys, Inc | 10,000.00 | | | | | | | 10,000.00 |
| Fullco Machineworks Inc | 4,666.00 | | | | | | | 4,666.00 |
| Global Petroleum Rentals LLC | 1,833.00 | | | | | | | 1,833.00 |
| Gonzales Lawn Care | 100.00 | | | | | | | 100.00 |
| Google LLC | 852.00 | | | | | | | 852.00 |
| Grainger | 908.54 | | | | | | | 908.54 |
| Grant Blake | - | | DU | | 300,000.00 | 12/7/2020 | Obj. | - |
| Houston Oilfield Equipment | 5,100.00 | | | | | | | 5,100.00 |

| Creditor | Claim per Schedules Amount | Contingent | Unliquidated | Disputed | Proof of Claim* Amount | Date Filed | Objection | Plan Proponent's Position on Allowance |
|---|---|---|---|---|---|---|---|---|
| Infinisource Inc | 165.00 | | | | | | | 165.00 |
| Insight Direct USA | 111.15 | | | | | | | 111.15 |
| J&M Premier Services | 1,600.00 | | | | | | | 1,600.00 |
| Joe Eric Cabrera | - | | DU | | | | | - |
| Kallred Oilfield Services LLC | 10,450.23 | | | | | | | 10,450.23 |
| Kevin Lee Mirelez | - | | DU | | | | | - |
| Lawfirm Of Christopher D Montez | 30.00 | | | | | | | 30.00 |
| Linda Milanovich | - | | DU | | | | | - |
| Llmh, LLC | 18,700.00 | | | | | | | 18,700.00 |
| Lonestar Forklift | 2,068.77 | | | | | | | 2,068.77 |
| Madison Hendrix ‡ | 4,276.82 | | DU | | | | | 4,276.82 |
| Madison Properties, LLC | 7,515.93 | | | | | | | 7,515.93 |
| Mccoy Water Supply Corporation | 109.29 | | | | | | | 109.29 |
| Mcmaster-Carr Supply Company | 171.42 | | | | | | | 171.42 |
| Merricks Pressure Testing, LLC | 1,000.00 | | | | | | | 1,000.00 |
| Meyer Service Company | 198,433.18 | | | | | | | 198,433.18 |
| Mid-South Synergy | 2,259.00 | | | | | | | 2,259.00 |
| Miguel Carrillo | - | | DU | | | | | - |
| Mikes Gates LLC | 9,663.27 | | | | 9,663.27 | 11/17/2020 | | 9,663.27 |
| MineralTree | 1,324.24 | | | | | | | 1,324.24 |
| MP Rental & Fishing Services, LLC | 104,997.00 | | | | | | | 104,997.00 |
| Navasota LP Gas Co Inc | 751.55 | | | | | | | 751.55 |
| Neopost | 73.78 | | | | | | | 73.78 |
| New Benefits, Ltd | 400.00 | | | | | | | 400.00 |
| Nextiva | - | | | | | | | - |
| NOBSTERSHOTSHOT | 3,820.00 | | | | | | | 3,820.00 |
| Norma Lynn Maldonado | - | | DU | | | | | - |
| OfficeDepot | 24.36 | | | | | | | 24.36 |
| Omar Balboa | - | | DU | | | | | - |
| Oracle America Inc | 23,531.70 | | | | | | | 23,531.70 |
| Orourke Dist. Co. Inc. | 1,291.28 | | | | | | | 1,291.28 |
| OSHA | 86,900.00 | | | | | | | 86,900.00 |
| Permian Machinery Movers Inc | 9,135.00 | | | | | | | 9,135.00 |
| Porter Hedges LLP | 3,039.52 | | | | | | | 3,039.52 |
| Pradon Construction &Trucking Co | 2,750.00 | | | | | | | 2,750.00 |
| Pt Solutions | 1,503.03 | | | | | | | 1,503.03 |
| Pt Solutions Vending | 448.65 | | | | | | | 448.65 |
| Quadient/Neopost | 73.78 | | | | | | | 73.78 |
| Quench USA, Inc. | 13,503.87 | | | | | | | 13,503.87 |
| R&S Oilfield | 4,865.00 | | | | | | | 4,865.00 |
| Redifuel | 266.95 | | | | | | | 266.95 |
| Redwing Shoes Of America | 150.00 | | | | | | | 150.00 |
| Reliable Pumps Consultants Inc | 1,582.71 | | | | | | | 1,582.71 |

Exhibit C                    Page 2 of 3                    Summary of General Unsecured Claims

| Creditor | Claim per Schedules Amount | Contingent Unliquidated Disputed | Proof of Claim* Amount | Date Filed | Objection | Plan Proponent's Position on Allowance |
|---|---|---|---|---|---|---|
| Reliable Specialty Company | 6,575.00 | | | | | 6,575.00 |
| Republic Services #688 | 1,922.16 | | | | | 1,922.16 |
| Republic Services #859 | 286.88 | | | | | 286.88 |
| Richard A. Fagin | 2,405.00 | | | | | 2,405.00 |
| Richard Carson | 250.00 | | | | | 250.00 |
| RL Energy Solutions LLC | 640.50 | | | | | 640.50 |
| Rushing Machine Shop | 320.00 | | | | | 320.00 |
| S and M Cranes LLC | 4,950.00 | | | | | 4,950.00 |
| Safety Solutions LLC | 666.75 | | | | | 666.75 |
| Safety-Kleen Systems Inc | 1,159.68 | | | | | 1,159.68 |
| SAFOCO | 21,200.00 | | | | | 21,200.00 |
| Saia MotorFreight Line LLC | 719.17 | | | | | 719.17 |
| Salt And Light Energy Equipment LLC | 5,963.00 | | | | | 5,963.00 |
| Schwegman Lundberg & Woessner PA | 8,042.94 | | | | | 8,042.94 |
| ServicePlus LLC | 6,384.45 | | 6,384.45 | 11/20/2020 | | 6,384.45 |
| Sherwin-Williams | 327.35 | | | | | 327.35 |
| Shieldfire & Suppression | 342.07 | | | | | 342.07 |
| Stuarthose & Pipeco | 561.10 | | | | | 561.10 |
| Team Ford Of Navasota | 291.65 | | | | | 291.65 |
| Texas Flange & Fitting Supply Inc | 2,137.12 | | | | | 2,137.12 |
| Trio Equip Rental & Services LLC | 3,200.00 | | | | | 3,200.00 |
| United Vision Logistics | 2,710.00 | | 2,710.00 | 11/23/2020 | | 2,710.00 |
| UPS | 51.33 | | | | | 51.33 |
| V&H Oilfield Inc | 3,086.75 | | | | | 3,086.75 |
| VTX Communications | 85.00 | | | | | 85.00 |
| Watsco Supplies Inc | 787.82 | | | | | 787.82 |
| Wood Smith Henning & Berman, LLP | 10,000.00 | | | | | 10,000.00 |
| Xerox Business Solutions Southwest | 373.79 | | | | | 373.79 |

Total Allowed General Unsecured Claims $ 1,542,260.58

**Notes**

\* Reflects claims filed as of December 31, 2020 at 5:00 p.m. CST. These amounts are subject to change as the claims deadline for filing claims is March 8, 2021, and the deadlien for claims by governmental units is May 10, 2021.

† The total amount due to Bestway Oilfield should be $270,976.04; however $42,000, is potentially a secured claim and is treated as such in Class 2G

‡ The first $4,276.82 of this claim is for unpaid wages that had accrued at the time of the employee's death and is liquidated and not subject to dispute. Any additional claim is unliquidated and disputed.

Exhibit C                    Page 3 of 3                    Summary of General Unsecured Claims

Exhibit D
**Summary of Ford Motor Credit Secured Claims**

| Asset/Collateral VIN | Claim per Schedule D | Proof of Claim Claim no. | Amount | Plan Proponent's Position on Allowance |
|---|---|---|---|---|
| 1FT7W2BT3KEC51620 | | 1 | $ 35,619.77 | |
| 1FT7W2BT4KED63648 | | 2 | 46,722.41 | |
| 1FT7W2BT5KEC23043 | | 3 | 42,939.17 | |
| 1FT7W2BT0KEC87555 | | 4 | 34,875.87 | |
| 1FT7W2BT5JEC78266 | | 5 | 30,964.96 | |
| 1FTEW1E51JKD42738 | | 6 | 21,871.38 | |
| 1FT7W2BT1HEF34266 | | 7 | 22,306.16 | |
| 1FT7W2BT3JEB59504 | | 8 | 23,744.95 | |
| 1FT7W2BT1KEC89699 | | 9 | 39,449.25 | |
| 1FT7W2BT3KEC62598 | | 10 | 40,973.73 | |
| 1FT7W2BT3KEC89686 | | 11 | 40,139.59 | |
| 1FT7W2BT0KED63646 | | 12 | 44,474.80 | |
| 1FT7W2BT1KEC89704 | | 15 | 39,401.05 | |
| 1FT7W2BT1KEC89685 | | 16 | 35,267.57 | |
| 1FTEW1E42KKD44944 | | 17 | 37,955.19 | |
| 1FT7W2BT7KEF39530 | | 18 | 49,277.20 | |
| 1FTEW1E43KKD81579 | | 19 | 43,203.80 | |
| 1FT7W2BT3KEC07410 | | 20 | 55,361.78 | |
| 1FT7W2BT1GEC82307 | | 21 | 11,904.95 | |
| 1FT7W2BT4KEC89700 | | 22 | 37,920.01 | |
| 1FT7W2BT2KEC89677 | | 23 | 38,105.34 | |
| 1FT7W2BT3KEC89705 | | 24 | 37,566.31 | |
| 1FT7W2BT0KEC89676 | | 25 | 38,176.55 | |
| 1FT7W2BT3KEC55442 | | 26 | 37,561.90 | |
| 1FT7W2BT4KEC89695 | | 27 | 37,561.90 | |
| 1FT7W2BT9KEC44896 | | 28 | 36,400.02 | |
| 1FT7W2BT2KEC55433 | | 29 | 40,139.59 | |
| 1FT7W2BT2KEC62611 | | 30 | 41,270.98 | |
| 1FT7W2BT6KED63649 | | 31 | 44,436.15 | |
| 1FT7W2BT2KEC89680 | | 32 | 40,139.59 | |
| | $ 1,392,788.93 | | $ 1,125,731.92 | $ 1,125,731.92 |

ASPEN ENERGY PARTNERS

December 19, 2020

Mr. Mike Clark
Chief Executive Officer
Eagle Pressure Control, LLC
5808 FM 3455
Navasota, TX 77868

Dear Mr. Clark,

As part of the Eagle Pressure Control, LLC (the "Company") restructuring process, Aspen Energy Partners ("AEP") acting for itself or through one of its affiliates is pleased to submit this non-binding indicative proposal for a potential investment in the Company:

1. Investment Commitment:
   a. $600,000 of debtor-in-possession financing
   b. $150,000 to satisfy all unsecured creditor claims

2. Timetable: In order to preserve the Company's customer, vendor and employee relationships, it is critical to AEP that the restructuring process is completed by January 31, 2021.

3. The AEP Investment Commitment will be paid in cash and will be funded through AEP's existing equity capital commitments.

4. The conditions to the consummation of the proposed transaction include:
   a. AEP's senior secured debt will convert to 100% equity ownership in the Company.
   b. Ford Motor Credit and De Lage Landen facilities remain in place upon emergence from bankruptcy.
   c. The Company receives a full discharge from all pre-petition claims.
   d. The Company submits a plan consistent with this non-binding indicative proposal to the trustee by December 21, 2020
   e. The Company emerges from Chapter 11 by January 31, 2021.
   f. Negotiation, execution and delivery of a mutually satisfactory definitive agreement and related documents.
   g. Approval by AEP's board of directors.
   h. Receipt of all required government and other approvals and consents.

5. The Company will make available to AEP and AEP's representatives access to such information and documents regarding the Company as AEP may reasonably request.

6. From the date of this letter until the earliest of (i) consummation of the transaction (if so consummated) or (ii) January 31, 2021, the Company will not, and will cause its controlled affiliates and the Company's and such affiliate's respective officers, directors, employees, financial advisors, attorneys, agents and other representatives not to, directly or indirectly provide information to, solicit, encourage, entertain or respond to (other than to decline any invitation) inquiries or proposals from, initiate or participate in discussions or negotiations (and shall suspend any existing discussions and negotiations) or enter into



definitive documentation with, any person, entity or other third party, except AEP or its permitted assigns, with respect to the Company.

7.      AEP and the Company will each bear their respective expenses incurred in connection with the negotiation, preparation, and consummation of the contemplated transaction.

8.      This letter will be governed by and construed in accordance with the laws of the State of Texas, excluding any conflicts of law provisions that would render the law of another jurisdiction applicable.

9.      Except with respect to paragraphs 5, 6 and 7 hereof, this letter shall not constitute a binding commitment or agreement between the parties, but merely sets forth their present intentions with respect to the terms proposed to be incorporated in a purchase agreement or other related agreement mutually acceptable to the parties thereto.  This letter shall not constitute an offer of or for securities.  AEP reserves the right to terminate discussions and negotiations with Company at any time.  The parties have no rights or obligations of any kind whatsoever with respect to the potential transaction by virtue of this letter other than for the matters specifically agreed to in paragraphs 5, 6 and 7 hereof. Without limiting the preceding sentences, nothing in this letter requires any party to enter into a transaction or to negotiate a transaction for any specified period of time.  In addition, the parties agree that there is no partnership or joint venture or special relationship of any kind, or intent to create one, between the parties and that they will take no action to create, and no conduct by them should be interpreted as creating, such a relationship or intent, which must instead be separately documented by an agreement signed and approved by both parties.  This indicative proposal will expire at 6:00 pm CST on December 20, 2020.

Regards,
**Aspen Energy Partners, LLC**

Michael Cheeseman
Chief Executive Officer

Agreed this  19  day of December 2020.

**Eagle Pressure Control, LLC**

By:_____

Name: _____
          Mike Clark

Its:_____
          CEO

Exhibit F
# Master Service Agreements

| Company | Date Executed |
|---|---|
| Ageron Energy, LLC and U.S. Enercorp, Ltd | 3/3/20 |
| Alchemist Energy, LLC | 9/4/20 |
| Allegiant Resources, LLC | 10/2/19 |
| Alliance Energy Services, LLC | 10/16/18 |
| Alta Mesa Services, LP; Oklahoma Energy Acquisitions, LP; Petro Operating Company, LP; The Meridian Resource & Exploration, LLC; and Northwest Gas Processing, LLC | 2/23/16 |
| Amerrill Energy, LLC | 2/22/13 |
| Anadarko Petroleum Company and its Affiliate Companies | 1/31/2012, amended to Eagle PCO LLC 10/23/19 |
| Anchor Energy Solutions | 3/6/19 |
| Apache Corporation | 5/29/18 |
| Apollo Energy Operating Company, LP | 1/13/12 |
| Armor Energy LLC | 1/29/19 |
| BBL Operating Company, LLC | 10/30/18 |
| BBX Operating, LLC | 1/14/15 |
| Beacon E&P Resources, LLC | 10/14/19 |
| Birch Operations, Inc. | 1/23/19 |
| Blue Fin Services, LLC | 1/30/20 |
| Brammer Engineering, Inc. | 10/17/12 |
| Brazos River Exploration | 11/18/20 |
| Buffco Production Inc. | 9/19/13 |
| Capital Star Oil & Gas, Inc. | 12/6/18 |
| CCI East Texas Upstream LLC | 11/1/18 |
| Centennial Resource Production LLC and its subsidiaries and | 1/18/19 |
| Centex Energy, LLC | 5/31/16 |
| CH4 Energy II, LLC | 7/10/14 |
| CH4 Energy Six, LLC | 9/19/19 |
| Cinco Natural Resources | 10/10/19 |
| CML Exploration, LLC | 10/26/12 |
| Colgate Operating, LLC | 1/24/19 |
| Comstock Resources, Inc.; Comstock Oil & Gas, LLC; Comstock Oil & Gas-Louisiana, LLC | 8/10/20 |
| Crimson Exploration Operating, Inc. and its affiliiates and Contango | 7/1/20 |
| Covey Park Energy LLC | 1/25/18 |
| Cox Operating, LLC | 1/28/19 |
| Creative Oil & Gas Operating, LLC | 3/21/19 |

| Company | Date Executed |
| --- | --- |
| Crimson Energy Partners IV, LLC | 12/17/18 |
| Crimson Exploration Operating, Inc. | 4/5/19 |
| Davis Southern Operating Company, LLC | 6/26/14 |
| Denbury Onshore LLC | 11/12/18 |
| Devon Energy Production Company, LP; Devon Gas Services, LP; Southwestern Gas Pipeline, Inc.; Acacia Natural Gas Corporation | 1/24/2011, amended to Eagle 8/26/19 |
| Diamondback E&P LLC | 7/29/19 |
| Discovery Natural Resources LLC | 12/23/19 |
| E & B Natural Resources Corporation | 3/14/16 |
| Oak Valley Operating LLC | 9/18/13 |
| Eclipse Resources-PA, LP | 4/25/19 |
| Eclipse Resources I, LP | 4/25/19 |
| Energy & Exploration Partners Operating, L.P. | 11/8/12 |
| EnerVest Operating, LLC (assigned to Magnolia Oil & Gas Operating LLC on 7/1/19) | 3/21/18 |
| Ensight IV Energy Management, LLC | 9/23/19 |
| ENXL, LLC | 4/7/18 |
| EOG Resources, Inc. | 3/7/18 |
| EP Energy E&P Company, LP | 9/4/18 |
| ETX Energy, LLC | 10/4/18 |
| Evolution Operating Company | 11/2/10 |
| E-Z Flowback Services, Inc. | 3/15/19 |
| Forest Oil Corporation | 10/1/09 |
| Frac Tech Services, LLC | 5/31/11 |
| Freedom Production, Inc. | 8/12/19 |
| Geophysical Technology, Inc. | 2/1/16 |
| GeoSouthern Energy Corporation | 8/10/10 |
| GEP Haynesville, LLC | 3/7/19 |
| Geostock Sandia, LLC | 2/5/19 |
| Halcon Operating Co., Inc. | 7/24/12 |
| Hibbard Energy, LP | 9/12/19 |
| Hilcorp Energy Company | 5/7/18 |
| Hillwood Oil & Gas Operating Company, LP | 3/7/12 |
| Impetro Operating, LLC | 3/25/19 |
| Indigo Minerals, LLC | 11/28/18 |
| Interstate Explorations LLC | 1/6/16 |
| Kinder Morgan Contracting Services LLC | 6/27/18 |
| KJE Oil & Gas LLC | 9/5/19 |
| Knight Resources, Inc. | 8/20/10 |
| Krescent Energy Company, LLC | 8/30/10 |

| Company | Date Executed |
|---|---|
| Laredo Energy Operating, LLC | 2/14/19 |
| Legacy Reserves Operating LP | 1/15/20 |
| Leor Exploration, LLC | 3/10/2011, amended 3/9/16 for termination date |
| Linn Operating, Inc. | 10/30/15 |
| Lonquist & Co., LLC; Lonquist Field Service, LLC; Lonquist & Co. (Canada) ULC; Lonquist Field Service (Canada) ULC | 2/9/18 |
| Lonestar Resources, Inc. | 10/28/19 |
| Luxe Operating LLC | 7/12/18 |
| M.P. Rentals and Fishing Services LLC | 1/25/19 |
| Magnolia Oil & Gas Operating LLC (assignment of Enervest Operating | 7/1/19 |
| Marathon Oil Company | 7/1/19 |
| Matador Production Company | 9/4/18 |
| MD America Energy, LLC | 1/15/16 |
| Memorial Resource Development LLC | 7/19/13 |
| Momentum Energy Services, LLC | 3/11/19 |
| Nadel and Gussman, LLC | 12/19/19 |
| Natural Gas Pipeline of America, LLC | 6/28/18 |
| Navidad Operating Company, LLC | 8/18/19 |
| New Century Operating, LLC | 11/18/16 |
| Northfield Enterprises, Inc. | 11/1/13 |
| Oak Valley Operating, LLC | 9/18/13 |
| Oak Energy, LLC | 10/29/20 |
| ORX Resources, LLC | 5/3/18 |
| Pardus Oil & Gas Operating, LP | 10/12/18 |
| PDC Energy, Inc. | 3/27/19 |
| Petrodome Operating, LLC | 5/3/11 |
| PetroEdge Operating LLC | 1/7/14 |
| Pine Wave Energy Partners Operating, LLC | 12/30/19 |
| Presco, Inc. dba Texas Presco, Inc. | 7/30/15 |
| Pride Energy Company, an Oklahoma General Partnership | 7/9/12 |
| Relentless Permian Operating LLC | 10/17/18 |
| RG Exploration LLC | 5/30/19 |
| Riley Permian Operating Company, LLC | 9/28/20 |
| Rosewood Resources, Inc. | 6/18/15 |
| Rovig Minerals, Inc. | 3/4/19 |
| Rutherford Oil Corporation | 7/11/18 |
| Sabalo Operating, LLC | 9/17/14 |

| Company | Date Executed |
|---|---|
| SEA Eagle Ford LLC, c/o Sundance Energy, Inc. | 5/24/19 |
| Seidler Oil & Gas Operating, LLC | 11/11/13 |
| Silver Creek Permian Operating Company, LLC | 3/25/19 |
| SWEPI LP, (Shell) | 2/12/20 |
| SND Operating LLC | 10/25/18 |
| Southern Bay Operating, LLC | 1/26/12 |
| Spindletop Oil & Gas Co. | 7/18/16 |
| Strata Scout Drilling, LLC | 1/6/16 |
| Strategic Oilfield Services, Inc. | 9/19/16 |
| Sydri Operating, LLC | 11/5/20 |
| Tanos Exploration II, LLC | 5/9/19 |
| Tetra Technologies Inc. | 10/5/20 |
| Texas Petroleum Investment Company | 7/27/18 |
| Texegy Operating Company LLC | 3/10/17 |
| Torrent Oil LLC | 9/10/18 |
| Treadstone Energy Partners Operating, LLC | 10/29/18 |
| Triad Hunter, LLC | 4/25/19 |
| Unit Corporation and each of its directly and indirectly owned subsidiaries, including, but not limited to, Unit Petroleum Company and Unit Drilling Company, and an future direct or indirect subsidiaries of Unit Corporation | 3/27/19 |
| Venado Oil & Gas LLC | 3/12/19 |
| Verdun Oil & Gas LLC | 2/19/19 |
| WCS Oil & Gas Corporation | 4/9/18 |
| W&T Offshore, Inc. | 9/11/19 |
| Seaboard International, Inc. dba Weir Seaboard | 10/23/15 |
| WildHorse Resources Management Company, LLC | 11/28/16 |
| XTO Energy Inc. and its affiliates, Barnett Gathering, LLC; English Bay Pipeline LLC; Fayetteville Gathering Company; Mountain Gathering, LLC; Nesson Gathering System LLC; Ringwood Gathering Company ; Trend Gathering & Treating, LLC; and Timberland Gathering & Processing Company LLC | 7/29/19 |
| Zarvona Energy LLC | 1/28/19 |